IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SANDRA C. HASTINGS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-13-0042 |
| THE LONG TERM DISABILITY PLAN FOR GO-GETTERS, INC., *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Plaintiff Sandra C. Hastings ("Plaintiff" or "Hastings") originally filed a complaint under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. 1001, *et seq.*, against Defendants Dearborn National Life Insurance Company, ("Dearborn National"),[1] Go-Getters, Inc., ("Go-Getters"), Long Term Disability Plan for Go-Getters, Inc. (G19402) (the "Plan"), and Medical Life Insurance Company ("Medical Life"), alleging that Dearborn National improperly terminated her long term disability plan. *See* Compl., ECF No. 2.

Currently pending is Plaintiff's Motion to Supplement the Record. (ECF No. 25). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, Plaintiff's Motion to Supplement the Record (ECF No. 25) is DENIED.

---

[1] In the initial Complaint, Plaintiff listed "Dearborn National Life Insurance Company" under a subsidiary name, "Fort Dearborn Life Insurance Company." The Complaint was subsequently amended. ECF No. 10.

BACKGROUND

Plaintiff began her employment with Defendant Go-Getters in June of 1988. Compl., ¶¶3-9. At issue is a long term disability insurance policy obtained through Dearborn National with an effective date of July 1, 2003. *See* Compl., ¶¶3-9. Plaintiff concluded her employment on September 13, 2007, and thereafter applied for long term disability benefits for chronic pain in her neck and her right knee. *Id.* Dearborn National awarded the requested benefits on April 14, 2009. *Id.* However, Plaintiff was subsequently notified on November 12, 2009 that Dearborn National was terminating her benefits because it had not received medical records to support continued benefits. *Id.* Plaintiff appealed the administrator's decision in February 2010. *Id.* Pursuant to Plaintiff's appeal, Dearborn National obtained all of Plaintiff's medical records and had two independent professionals speak with Plaintiff's treating physicians as part of a comprehensive review of her claim. *See* Response to Motion to Supplement the Record, ECF No. 26. On November 22, 2010, Dearborn National issued a final decision denying Plaintiff's appeal. Compl. ¶11.

In her original Complaint, filed in the Circuit Court for Wicomico County, Maryland,[2] Plaintiff contended that the Plan and its administrator wrongfully terminated her long term disability payments, and failed to base its decision on Plaintiff's complete medical file. *See id.* ¶12. Plaintiff further alleged that she has been "totally disabled" since September 13, 2007, and requested the reinstatement of her long term disability benefits dating back to November 16, 2009. *Id.*

---

[2] The case was removed to this Court under federal question jurisdiction by virtue of 28 U.S.C. § 1331. *See* Notice of Removal, ECF No. 1.

Through the pending Motion to Supplement the Record, Plaintiff seeks to add an affidavit from her attorney describing a telephone call with one of her former physicians about the review of Plaintiff's appeal, as well as an email from the same physician to confirm that the conversation took place. In the affidavit, attorney Mark Tilghman ("Tilghman") certifies that Plaintiff's physician informed Tilghman that, although he had no recollection of speaking with Dearborn National's agents, "it was not his practice to give such an opinion." Mot. to Supplement the Record, 8. In an email the following day, the physician wrote:

> I routinely refer patients out for disability determinations, which I believe is what I did for your client. As I tell all my patients, a disability specialist needs to make the determination of a disability. I do not recall a conversation with the individual you mention, but have had such individuals, as well as patients, call from time to time trying to circumvent the obvious need of having a specialist make the call as to whether a patient is disabled. What the disability specialist says is the final say in these types of matters, in my opinion.

Mot. to Supplement the Record, ECF No. 25-1. Plaintiff contends that the email contradicts the report of Dearborn National's independent professionals, and that both the affidavit and the email should therefore be admitted to the record.

## STANDARD OF REVIEW

The Employee Retirement Insurance Security Act ("ERISA"), 29 U.S.C. 1001, *et seq.*, does not establish a standard of review for actions challenging benefit eligibility determinations. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989). In *Firestone*, the United States Supreme Court attempted to fill this gap, holding that "a denial of benefits challenged under [29 U.S.C. 1001, *et seq.*] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine

eligibility for benefits or to construe the terms of the plan." *Id.* at 115. With respect to the introduction of new evidence not presented to the plan-administrator, the United States Court of Appeals for the Fourth Circuit has interpreted *Firestone* to mean "courts conducting *de novo* review of ERISA benefits claims should review only the evidentiary record that was presented to the plan administrator or trustee except where the district court finds that additional evidence is necessary for resolution of the benefit claim." *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1026-27 (4th Cir. 1993).

ANALYSIS

Plaintiff contends that the circumstances of her appeal require this Court to permit supplementation of the record to include the October 14, 2011 email. In *Quesinberry*, 987 F.2d at 1020, a plaintiff brought an action to collect benefits under an accidental death insurance policy purchased by his wife. His wife had been diagnosed with multiple sclerosis, and was given a dosage of Renografin, a substance that was administered to aid in interpreting results from a computerized tomography (CT) scan. *Id.* Within minutes of receiving the injection of Renografin, the plaintiff's wife went into cardiac arrest, dying three days later. *Id.* The insurance company denied the plaintiff's claim, and the plaintiff appealed to the United States District Court for the Western District of Virginia, which held that the plaintiff was entitled to benefits. *Id.* In affirming, the Fourth Circuit held that due to the complexity of Mrs. Quesinberry's cause of death, "live testimony by the doctors at trial would assist the court in its *de novo* review of the claim." *Id.* at 1027. The Fourth Circuit went on to identify several other exceptions where evidence not brought before a claim-

4

administrator should be admitted by the judicial reviewing body. These included complex medical issues, the availability of limited administrative review procedures, concerns over impartiality, and circumstances where there is additional evidence which the claimant could not have presented during the original review process. *Id.* at 1027. The Fourth Circuit concluded that their holding did "not intimate, however, that the introduction of new evidence is required in such cases. A district court may well conclude that the case can be properly resolved on the administrative record …" *Id.*

In reaching its holding, in *Quesinberry,* the Fourth Court acknowledged a split amongst the Courts of Appeals regarding how to determine whether to admit new evidence during a review of disability claims. The Fourth Circuit endorsed the Eighth Circuit's methodology in *Davidson v. Prudential Insurance Co.*, 953 F.2d 1093 (8th Cir. 1992), an ERISA case in which the plaintiff brought suit to challenge an administrator's determination that the plaintiff was not permanently disabled, and thus could return to work. *Id.* at 1094. When the plaintiff moved to supplement the record, the Eighth Circuit determined that this motion was merely an attempt to reopen the record to submit more favorable evidence than that originally presented. *Id.* at 1095. Likewise, in *Quesinberry*, the Fourth Circuit concluded that on similar facts, "a district court would be justified in exercising its discretion not to admit evidence beyond what was presented to the plan administrator." 987 F.2d at 1026.

In the present case, both the underlying facts of the case and the application of Fourth Circuit precedent undermine Plaintiff's argument. The October 14, 2011 email more closely resembles the attempted second-bite-at-the-apple the Fourth Circuit rejected in

*Quesinberry*. Indeed, it is not clear how a four-year-old email in which one of Plaintiff's former physicians admitted to having no recollection of a phone call about Hastings' disability claims would enhance this Court's understanding of the case. At best, it falls far short of the highly technical medical testimony the Fourth Circuit felt was necessary to resolve the claim in *Quesinberry*.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Supplement the Record (ECF No. 25) is DENIED.

A separate Order follows.

Dated:          June 30, 2015

                                                  /s/
                                        Richard D. Bennett
                                        United States District Judge